UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL JASON MILLER,
    Petitioner,

vs.

WARDEN, CORRECTIONAL
RECEPTION CENTER,
    Respondent.

Case No. 1:18-cv-424

Cole, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Petitioner, an inmate in state custody at the Correctional Reception Center in Orient, Ohio, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition and respondent's return of writ, to which petitioner has not replied.[1] (Doc. 1, 7).

For the reasons stated below, the petitioner should be denied.

I. **FACTUAL BACKGROUND**

At petitioner's April 30, 2015 guilty plea proceeding, the prosecution provided the following summary of facts underlying petitioner's plea:

> MR. GMOSER: Yes, Your Honor. If Your Honor please, Mike Gmoser on behalf of the State of Ohio. The evidence in this case establishes that on April the 18th, 2015, in Butler County in the City of Fairfield, in the early morning hours on that date, sometime shortly after 9:00 in the morning, this defendant with knowledge of Carol Boyd as an acquaintance of hers, a friend, if you will, went to her residence at 3601 Woodridge, Apartment 8.
>
> At that time, Carol Boyd was there under circumstances where she had prior surgery to her rotator cuffs, bilaterally, meaning one on each side, and she also had a hip surgery. As a result of those medical conditions, she had prescriptions for pain medication, oxycodone. This was a factor that was known to this Defendant.
>
> He went to that residence and thereupon struck Carol Boyd with an object, a lifting weight of approximately ten pounds, often referred to as a dumbbell, and struck her

---

[1] Petitioner was granted four extensions of time to file a response to the return of writ. (Docs. 9, 11, 13, 15). Most recently, petitioner was granted an extension of time up to and including May 9, 2019 to file a response. (Doc. 15).

> about the head twice, severely injuring Carol Boyd causing deep lacerations twice to her skull, crushing her bone and vascular structures in her skull. Under circumstances establishing thereby with respect to that blunt trauma, a purpose to kill her.
>
> Thereafter, he also proceeded to use a razor blade to slice into her wrist, lacerating what is called the ulnar artery; the Court may be familiar from time to time with the radial artery that's also within the wrist artery, but the ulnar artery is also there; causing blood to squirt from that, or spurt as it's called forensically, from that wound, indicating that she was likewise alive as a – at the time of that laceration, and also establishing a purpose to kill her.
>
> Also, the evidence would show that this was for the purpose of disguising the injuries that he had caused to make this appear to be a suicide as opposed to a purposefully [sic] killing.
>
> The evidence would also establish – it does establish, Your Honor, that the purpose to commit those assaults resulting in the purposeful death of this lady, was to take from her her prescription medication, oxycodone, which he did. And after leaving the residence and proceeding to lock the door behind him, in furtherance of that presumptive suicide, he then took various items that he had removed from the residence and deposited those in other places, five in all, to further disguise his conduct.
>
> The evidence will show that when he was arrested as a result of the investigative efforts of police officers that I will call detectives from the City of Fairfield, and as a result of their efforts, they were able to determine that this Defendant had been at that residence. He was questioned and admitted that he had been there, and in further discussions with him and observations that he had blood upon his person, this Defendant acknowledged that he was, after all, the person that had done the acts to which I have just described with respect to Carol Boyd.

(Doc. 6-1, Trans. at PageID 248–250).[2]

## II. PROCEDURAL HISTORY

### State Trial Proceedings

On April 28, 2015, petitioner, with the assistance of counsel, and the State entered into a Settlement Agreement. (Doc. 6, Ex. 1). According to the terms of the agreement, petitioner

---

[2] During the recitation of facts, it was also noted that "the pills were recovered in a dumpster in one of the locations that Mr. Miller showed the police officers that, and so – and there was – and other than blood on his person, there was blood in his car, and a matching dumbbell weight was found at his residence . . . ." (*Id.* at PageID 252).

2

agreed to plead guilty to Aggravated Murder upon the issuance of an indictment. Petitioner and the State agreed to enter an agreed sentence of life imprisonment without parole. The State agreed not to pursue the death penalty in the initial indictment, but reserved the right to re-present the case to the grand jury if petitioner breached the agreement. The agreement stated that "Defendant is entering this agreement voluntarily and on the advice of counsel; Defendant and counsel believe this is the best course of action; Defendant is not under undue influence or under the influence of any mind altering substances; and Defendant is competent to make this decision." (*Id.* at PageID 29). The agreement further stated that petitioner "had frank, in-depth discussions regarding this case, encompassing all facts known to them (including Defendant's confession) and possible outcomes," before entering into the agreement. (*Id.* at PageID 30). Finally, the agreement specified that the document—signed by petitioner, his two attorneys, and the State—encompassed the entirety of the agreement and that no other representations or promises had been made to petitioner.

The following day, on April 29, 2015, the Butler County, Ohio grand jury returned a two-count indictment charging petitioner with one count each of aggravated murder and aggravated robbery. (Doc. 6, Ex. 2).

On April 30, 2015, petitioner entered into a plea agreement. (Doc. 6, Ex. 3). As set forth in the Settlement Agreement, petitioner pled guilty to aggravated murder in exchange for an agreed upon sentence of life in prison without the possibility of parole. On the same day, the trial court conducted a plea hearing, accepted petitioner's guilty plea, and sentenced petitioner to the agreed sentence of life in prison without the possibility of parole. (Doc. 6, Ex. 4).

Petitioner did not appeal his conviction and sentence.

**Post-Conviction Petition and Motion to Withdraw Guilty Plea**

On October 27, 2015, petitioner, through counsel, filed a petition for post-conviction relief pursuant to Ohio Rev. Code § 2953.21 and a motion to withdraw his guilty plea, with an accompanying affidavit. (Doc. 6, Ex. 5, 6). Petitioner argued that his guilty plea was coerced and involuntary. Specifically, petitioner claimed that he never read the plea agreement, his attorney coerced him to enter the agreement, and that he was on drugs or going through withdrawal at the time. (*See id.* at PageID 36–37).

On December 15, 2015, the trial court issued an entry and order dismissing relief and denying petitioner's motion to withdraw his plea. (Doc. 6, Ex. 8). The trial court found petitioner's affidavit to be self-serving and insufficient to rebut the trial record, which it found "demonstrates a knowingly, intelligently, and voluntarily entered guilty plea." (*Id.* at PageID 58).

Petitioner, through counsel, appealed the trial court's judgment to the Ohio Court of Appeals. (Doc. 6, Ex. 9). Petitioner raised the following single assignment of error:

> The trial court erred by failing to hold an evidentiary hearing and failing to sustain Mr. Miller's motion to set aside and vacate the sentence and motion to withdraw guilty plea.

(Doc. 6, Ex. 11 at PageID 76). The Ohio Court of Appeals affirmed the judgment of the trial court by opinion issued October 17, 2016. (Doc. 6, Ex. 13).

Petitioner, through counsel, filed a notice of appeal to the Ohio Supreme Court. (Doc. 6, Ex. 14). In his memorandum in support of jurisdiction, petitioner raised the following single proposition of law:

> The Twelfth District Court of Appeals denied Mr. Miller his right to due process of law as guaranteed by the United States Constitution when it did not reverse the trial court's error in failing to hold an evidentiary hearing and failing to sustain Mr.

4

Miller's motion to set aside and vacate the sentence and Motion to Withdraw the Guilty Plea.

(Doc. 6, Ex. 15 at PageID 122). On June 21, 2017, the Ohio Supreme Court declined jurisdiction over the appeal. (Doc. 6, Ex. 16).

### Second Post-Conviction Petition

On October 16, 2017, petitioner, proceeding pro se, filed a second petition for post-conviction relief. Petitioner asserted the following single ground for relief:

> Miller's conviction and sentence is voidable because Miller was denied the effective assistance of counsel in violation of his rights under the Sixth Amendment of the United States Constitution.

(Doc. 6, Ex. 18 at PageID 156). On November 14, 2017, the trial court denied the petition as untimely and barred by the doctrine of *res judicata*. (Doc. 6, Ex. 20).

On April 20, 2018, petitioner filed a motion for leave to file a delayed appeal. (Doc. 6, Ex. 22). On June 11, 2018, the Ohio Court of Appeals denied the motion as unnecessary. (Doc. 6, Ex. 23). The Ohio appeals court construed the motion as a timely filed notice of appeal. At the time of the filing of respondent's return of writ, the appeal remained pending. However, on February 20, 2019, the Ohio Court of Appeals dismissed the appeal with prejudice for petitioner's failure to file an appellant's brief.[3]

Petitioner does not appear to have sought further review in the Ohio courts.

### Federal Habeas Corpus

Petitioner filed the instant federal habeas corpus action on June 11, 2018. (*See* Doc. 1 at PageID 15). Petitioner raises the following single ground for relief in the petition:

> **GROUND ONE**: Mr. Miller was denied his sixth amendment right to the effective

---

[3] Viewed at http://butlercountyclerk.org/ under Case No. CA2018-04-083. This Court may take judicial notice of court records that are available online to members of the public. *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

> assistance of counsel guaranteed him under the sixth amendment to the United States Constitution.
>
> Supporting Facts: Trial counsel coerced Miller to enter a plea agreement that was not voluntary made and signing the agreement without reading it. Moreover, counsel informed Miller that if he did not accept the plea that he could get the death penalty and Miller was not presented with or shown any evidence or documentation that he was actually charged with an offense carrying the death penalty.

(Doc. 1 at PageID 5).

Respondent has filed a return of writ in opposition to the petition. (Doc. 6). Respondent contends that petitioner's ground for relief is without merit.

As noted above, *see supra* n.1, although petitioner was granted four extensions of time to file a reply to the return of writ, petitioner has not filed a response.

### III.     THE PETITION SHOULD BE DENIED

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by petitioner to the state courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v.*

6

*Taylor,* 529 U.S. 362, 412–13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599–600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, 568 U.S. 289, 292 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves

7

authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, 565 U.S. 34, 38–40 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 565 U.S. at 38, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. _, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at _, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.*, at _, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)). The writ may issue only if the application of

8

clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

In this case, petitioner argues that he received the ineffective assistance of trial counsel because he claims that counsel coerced him to enter the plea agreement. Petitioner further argues that the plea agreement was not voluntarily entered because he did not read it and that counsel informed him that he could get the death penalty if he did not accept it. According to petitioner, he was not shown any evidence that he was actually charged with an offense carrying the death penalty. (Doc. 1, p. 5).

The Fourteenth Amendment's Due Process Clause guarantees that a guilty plea must be made voluntarily and intelligently with sufficient awareness of the relevant circumstances and likely consequences. *Boykin v. Alabama,* 395 U.S. 238, 242 (1968); *see also Brady v. U.S.,* 397 U.S. 742, 748 (1970); *King v. Dutton,* 17 F.3d 151, 153 (6th Cir. 1994). "[A] plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O'Grady,* 312 U.S. 329, 334 (1941)). In *Brady,* the Supreme Court adopted the following standard for determining the voluntariness of a guilty plea:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady,* 397 U.S. at 755 (quoting *Shelton v. United States,* 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), *rev'd on other grounds,* 356 U.S. 26 (1958)). The voluntariness of a guilty plea must

9

be assessed in light of all the relevant circumstances surrounding the plea. *Brady,* 397 U.S. at 749; *King,* 17 F.3d at 153 (and cases cited therein).

For a guilty plea to be deemed voluntarily entered with a "sufficient awareness of the relevant circumstances and likely consequences," the defendant must be correctly informed of the maximum sentence that could be imposed. *King,* 17 F.3d at 154; *Hart v. Marion Corr. Instit.,* 927 F.2d 256, 259 (6th Cir. 1991). Although the defendant must be apprised of such "direct consequences" of the plea, the court is under no constitutional obligation to inform the defendant of all the possible "collateral consequences" of the plea. *King,* 17 F.3d at 153; *see also El-Nobani v. United States,* 287 F.3d 417, 421 (6th Cir. 2002). "When a defendant subsequently brings a federal habeas petition challenging his plea, the state generally satisfies its burden by producing a transcript of the state court proceeding." *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). As the Supreme Court noted in *Blackledge v. Allison,* 431 U.S. 63 (1977):

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the guilty plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.* at 73-74 (internal citations omitted).

To establish ineffective assistance of counsel, petitioner must demonstrate both (1) his trial attorneys' conduct was constitutionally deficient; and (2) counsels' deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first prong of the *Strickland* test, it must be shown that counsels' representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at

688. In determining whether or not counsels' performance was deficient, the Court must indulge a strong presumption that the challenged conduct fell within the wide range of reasonable professional assistance. *Id.* at 689. Under the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate that a "reasonable probability" exists that, but for his counsels' errors, the outcome of the trial would have been different. *See id.* at 694. Petitioner has met his burden if he shows that the result of the trial would "reasonably likely have been different absent the errors." *Id.* at 695. In the context of a guilty plea, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In the instant case, petitioner challenged the voluntariness of his guilty plea in light of the alleged ineffectiveness of his trial counsel in his October 27, 2015 petition for post-conviction relief and motion to withdraw his guilty plea. (*See* Doc. 6, Ex. 5). In denying petitioner relief, the trial court found petitioner's supporting affidavit to be self-serving and insufficient to rebut the record, which it found demonstrated a knowingly, intelligently, and voluntarily entered guilty plea:

> The record establishes that on April 18, 2015, Carol Boyd was murdered. Petitioner Miller was arrested the next day under suspicion of having murdered Ms. Boyd. On April 29, 2015, Petitioner Miller was formally indicted with having committed the offenses of Aggravated Murder and Aggravated Robbery. On April 30, 2015, Petitioner Miller was brought before this Court. At this initial hearing, Petitioner Miller was represented by two privately retained defense counsel, Attorney Richard Hyde and Attorney John Holcomb, Jr.
>
> During the hearing, Petitioner Miller was arraigned in compliance with Crim.R. 10. It was then brought forth that the State of Ohio and Petitioner Miller had mutually agreed to a negotiated plea and sentence. The details of the negotiated plea were represented to the Court by the parties as follows: (1) Petitioner Miller would plead guilty to the Aggravated Murder charge; (2) the Aggravated Robbery charge would be dismissed; and (3) all parties would agree to a Life Without The Possibility of

Parole sentence, pursuant to R.C. 2953.08.

Upon being formally advised of the negotiated plea agreement, and before beginning its Crim.R. 11 plea colloquy, this Court conducted a voir dire of counsel for Petitioner and the Petitioner himself as to the decision making process that was undertaken to arrive at his plea. The questions to the attorneys included whether they've had the opportunity to consult with Petitioner Miller about this matter prior to the hearing; whether they were entering into this plea agreement with the State of Ohio after fulfilling their duties as effective advocates on behalf of Petitioner Miller; and whether they had any questions concerning Petitioner Miller's competency.

In response to these questions, Attorney Hyde indicated that he believed he had been effective in his representation of Petitioner Miller. Attorney Hyde explained to the Court that he had worked on this case every day, that he had obtained discovery, had gone over the discovery in detail, that the Fairfield Police Department and the Prosecutor's Office were forthcoming with discovery, that he had gone through the discovery with Petitioner Miller, that he had gone through some of the video statements with Petitioner Miller's family, that he had met with Petitioner Miller numerous times, and that he believed this to be the best course of action for the Petitioner Miller. Additionally, when Attorney Holcomb was asked, he agreed with all representations made by Attorney Hyde concerning their joint representation of Petitioner Miller.

The Court then asked Petitioner Miller a serious of questions. These questions included:

>    Whether he had enough time to consult with his attorneys in this case?
>
>    Whether he had frank discussions with his attorneys about this decision?
>
>    Whether he had reviewed the discovery, indictment, and other legal documents with his attorneys?
>
>    Whether he believed that this was the best course of action for him?
>
>    Whether he understood what a jointly recommended sentence was and its ramifications?
>
>    Whether he was certain that this is how he wants to proceed?

<u>Only upon hearing affirmative</u> responses and legally proper affirmations to all of these questions, did this Court then proceed into its usual Crim.R. 11 colloquy.

During the colloquy, Petitioner Miller indicated that he was not under the influence of any drugs or alcohol which could be affecting his abilities to make decisions.

> Petitioner further indicated that he had read, consulted with his attorneys, and was able to ask his attorneys questions before signing the plea of guilty. Petitioner Miller then answered in the affirmative that he had signed the plea form knowingly, intelligently, and voluntarily.
>
> Petitioner Miller also stated that no person had forced, threatened, coerced, or in any way caused him to plead guilty. The Court then asked Petitioner Miller a serious of three questions regarding his attorneys. From those questions Petitioner Miller answered that he was satisfied with his counsel, did not believe there was anything they could have done for him that they had not already done, and that they were able to answer all of his questions about the legal proceedings.
>
> What is more, after a statement of facts was read to Petitioner Miller, he acknowledged that he had committed this offense. Finally, before formally asking Petitioner Miller how he pleads, this Court asked him if he had any questions about what was covered at the hearing, if he had any questions about things that were not covered, and if he had any questions about the jury waiver and guilty plea form or items inside of the form. After Petitioner Miller informed this Court that he did not have any questions, this Court formally asked for, and accepted his guilty plea.
>
> In the face of these counseled and recorded statements made in open Court, Petitioner Miller now brings a post-conviction petition which claims, amongst other things, that: (1) both of his privately retained defense counsel were ineffective; (2) that Petitioner Miller signed the plea agreement without reading it; (3) that Petitioner Miller was forced to sign the plea agreement; and that (4) Petitioner Miller was never presented with any information indicating that any investigation, research, or discovery had been done in his case.
>
> . . .
>
> Upon careful consideration of the Affidavit in support of the petition for pos-conviction relief, and after having reviewed the record from the plea hearing, this Court DENIES the petition.
>
> Simply stated, the Court finds the Affidavit from Petitioner Miller to be a self-serving Affidavit that cannot be accepted as an accurate representation of the facts of this case. Rather, this Court finds that Petitioner Miller's own self-serving declarations are insufficient to rebut a record that clearly demonstrates a knowingly, intelligently, and voluntarily entered guilty plea. This is especially true where both defense counsel and Petitioner Miller were subject to *voir dire* by this Court before the Court proceeded to engage Petitioner Miller in the plea colloquy.
>
> During this *voir dire*, Defense Counsel thoroughly detailed to the Court the steps they had undertaken in this case. Additionally, Petitioner Miller himself indicated that he had enough time to consult with his attorneys prior to the hearing, that he had frank discussions with his attorneys, that he had reviewed the discovery and

> legal documents with his attorneys, that he believed that this was the best course of action for him, and that he was certain that the plea was how he wanted to proceed. Again, only after hearing all of this did this Court then move forward into the actual Crim.R. 11 plea colloquy.
>
> During the colloquy, Petitioner Miller answered all of this Court's questions properly, stated he was not under the influence of any drugs or medications, stated that he was satisfied with []his counsel, that his counsel had done everything they could for him, and stated that counsel had answered all of his questions.
>
> Therefore, while the Petitioner argues that "based on the evidence of record, it is so clear that the Mr. Miller unknowingly and unintelligently entered his guilty plea that a denial of the instant motion would demonstrate an unreasonable, arbitrary, and unconscionable attitude on the part of this Court", this Court disagrees. What is clear to the Court, is that the actual record of the in-court proceedings from April 30, 2015, defeats, contradicts and exposes Petitioner's self-serving Affidavit as incredible. This Court also finds that Petitioner only supported his petition with his affidavit that belies the record.

(Doc. 6, Ex. 8 at PageID 57–59). On appeal, the Ohio Court of Appeals subsequently ruled that the trial court did not err in determining that petitioner's affidavit contradicted the actual record and lacked credibility. (*See* Doc. 6, Ex. 13). The appeals court further found that petitioner otherwise "failed to show there is a reasonable probability that he would have not otherwise pled guilty but for any alleged errors." (*Id*. at PageID 118).

Upon review of the entire record in this case, the undersigned finds that petitioner has failed to demonstrate that the state courts' adjudication of his claims was contrary to or an unreasonable application of Supreme Court precedent. Petitioner seeks relief based on his claim that counsel rendered ineffective assistance by coercing him into entering a guilty plea. As he did in the state courts, petitioner contends that he signed the plea agreement without reading it, that his attorneys coerced him, and that petitioner was never shown any evidence or documentation that he was charged with an offense carrying the death penalty. (Doc. 1, at PageID 5). However, as reasonably determined by the Ohio courts, the trial court record demonstrates that petitioner's guilty plea was voluntary, intelligent, and entered after being fully

14

informed of his constitutional rights.

Prior to petitioner's plea colloquy, the trial court thoroughly examined petitioner and his attorneys regarding petitioner's decision to enter a guilty plea, including their discussions of the case, review of discovery, and their belief that a guilty plea was the best course of action.[4] (Doc. 6-1, Trans. at PageID 240–243). Counsel for petitioner stated that they met with petitioner and his family multiple times and that they had no questions about petitioner's competency to enter the plea.[5] (*Id.* at PageID 241–42). Petitioner specifically affirmed that he had enough time to consult with counsel, that he had frank discussions with counsel, that he had the opportunity to review the discovery, indictment, and other legal documents with his attorneys, that he understood the ramifications of a jointly recommended sentence, that he believed it was the best course of action, and that he was certain that was how he wanted to proceed. (*Id.* at PageID 243–44).

During the plea colloquy, petitioner further stated that he was not under the influence of any drugs or alcohol which could be affecting his decision, that he read the guilty plea before signing it, and that he signed the plea form knowingly, intelligently, and voluntarily.[6] (*Id.* at

---

[4] Counsel stated that they reviewed petitioner's police interview for *Miranda*-warning issues or signs of coercion. Although petitioner has argued that he was under the influence of drugs at the time of the police interview and suffering from withdrawal symptoms when meeting with his attorneys (*see* Doc. 6, Ex. 6), counsel indicated that "Mr. Miller, during the interview process, seemed to be coherent, was not slurring his words, was not in any way under the influence of anything at the time, that we can tell, and so that is something that we look very hard at . . . and based on the statements that were made by Mr. Miller and the investigations conducted by the police department, this is - - this case is - - this is the best result in this case for Mr. Miller, in our opinion." (*Id.* at PageID 241).

[5] Counsel stated that "[e]very time I've met with Mr. Miller he is lucid, he's well-spoken, he's attended college, he knows what he's done. This is totally out of character for him, and when we get to the sentencing portion, we'll explain a little bit about that, but the - - he's a[n] intelligent individual who fell on some personal issues of his own which caused all this, in my opinion, but he's been able to talk about all this, and we went through it." (*Id.* at PageID 242).

[6] Although petitioner does not raise the claim that he was going through withdrawal symptoms during the course of entering his guilty plea in his habeas petition, in his post-conviction petition and appeal he argued that his plea was involuntary on this basis. (*See* Doc. 6, Ex. 5 at PageID 41; Ex. 11 at PageID 84). However, counsel attested to petitioner's competency to enter the guilty plea (*see supra* n.5) and petitioner affirmed before entering the plea that he was not suffering from any physical or mental disease, disability, or defect that would make it difficult for him to

15

PageID 245–47). With respect to his attorneys, petitioner affirmed that he was satisfied with counsel, he did not believe there was anything else they could have done for him, and they were able to answer all his questions about the legal proceedings. (*Id.* at PageID 246–48). Contrary to petitioner's claim that he was coerced into entering the plea, petitioner affirmed that no one had threatened, coerced, or in any way caused him to plead guilty:

> THE COURT: Okay. Has anyone in any way forced you, threatened you, coerced you, or in any way caused you to come in here and plead guilty to aggravated murder?
>
> THE DEFENDANT: No.

(*Id.* at PageID 247).

The trial court reviewed with petitioner the charges against him and the underlying statement of facts. (*Id.* at PageID 248). Petitioner affirmed that he understood the charges against him, that the facts were a true representation of his conduct, and that a guilty plea constitutes a complete admission of the allegations contained in the indictment. (*Id.* at PageID 252–53). The trial court further reviewed with petitioner the maximum penalties that he faced under the plea agreement and the constitutional rights that he would waive by entering his guilty plea. (*Id.* at PageID 253–57). Petitioner indicated that he understood that he had a right to a jury trial, to call and compel witnesses to testify on his behalf, and to cross-examine adverse witnesses, that he could not be forced to testify against himself, and that the state was required to prove that he was guilty beyond a reasonable doubt. (*Id.* at PageID 254–57). Finally, after having the opportunity to ask any questions and being advised of his constitutional rights, petitioner affirmed that he was giving up these rights knowingly, intelligently, and voluntarily. (*Id.* at PageID 257–58).

---

understand the proceedings. (Doc. 6-1, Trans. at PageID 245).

After review of the record in this case, the undersigned is convinced that the Ohio courts reasonably determined that petitioner's guilty plea was not the result of coercion from counsel or otherwise involuntary. The record contradicts petitioner's claims in the instant petition that trial counsel coerced him into entering a guilty plea and he signed the agreement without reading it. As noted above, petitioner specifically affirmed that he had read the guilty plea form and was not coerced or otherwise forced into entering his guilty plea involuntarily.

Petitioner's remaining claim that counsel was ineffective for failing to provide him with "evidence or documentation that he was actually charged with an offense carrying the death penalty" (Doc. 1 at PageID 5) is also without merit. Under Ohio law, the death penalty can be imposed for aggravated murder where the offense "was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by the offender" or the offense was committed in the course of committing an aggravated robbery. Ohio Rev. Code § 2929.04(A)(3), (7). In this case, the charges against petitioner included that petitioner killed the victim during the course of an aggravated robbery. *See* § 2929.04(A)(7). Additionally, the prosecution alleged that the victim was alive at the time petitioner cut her wrist and that he did so "for the purpose of disguising the injuries that he had caused to make this appear to be a suicide. . . ." (Doc. 6-1, Trans. at PageID 249–50). *See* § 2929.04(A)(3). As noted by the trial judge before sentencing, "[t]he Court will note from my experience that clearly, this case could have, it looks like contained multiple capital specifications, and that the agreement in this case in large part . . . was made to avoid that." (Doc. 6-1, Trans. at PageID 262).

Furthermore, as argued by respondent, that petitioner faced the death penalty was evident from the settlement agreement, which specified that "the State of Ohio agrees not to pursue the death penalty in the initial indictment" in exchange for petitioner pleading guilty to Aggravated

17

Murder at arraignment. (Doc. 6, Ex. 1). The agreement further indicated that if petitioner breached the agreement that "the State of Ohio may re-present this case to the Butler County Grand Jury for consideration of the death penalty." (*Id.* at PageID 29)..[7]

Finally, to the extent that petitioner may contend—as he did in the state courts.[8] (*see* Doc. 6, Ex. 18 at PageID154–55)—that the prosecution would have been unable to prove that he committed an aggravated robbery at trial, petitioner affirmed that by virtue of entering his guilty plea he was making a complete admission of guilt to the allegations contained in the indictment and that he waived the right to have the prosecution prove his guilt on each element of the offenses with which he was charged. (Doc. 6 at PageID 253–55).

Accordingly, petitioner has failed to demonstrate that the adjudication of his claims in the state courts was contrary to or an unreasonable application of Supreme Court precedent. The state courts reasonably determined that petitioner's guilty plea was voluntary, intelligent, and entered after being fully informed of his constitutional rights. Petitioner's claims that his trial

---

[7] Prior to petitioner entering his guilty plea, the prosecution noted that the death penalty was not pursued according to the terms of the agreement: "I did not recommend the death penalty in furtherance of an agreement from this Defendant and his counsel, and the grand jury and the family, the children of Carol Boyd, that in furtherance of an agreement, taking the death penalty off the table, if you will, that this Defendant would immediately plead guilty to aggravated murder with a sentence agreed to life without the possibility of parole and that was understood and agreed by the family." (Doc. 6 at PageID 251).

[8] In his successive post-conviction petition, petitioner argued that there was not sufficient evidence to substantiate a death penalty specification. Petitioner argued there was no evidence of pre-meditation or that he was committing any other felony at that time. (*See* Doc. 6 at PageID 158). According to petitioner, "At a trial, Miller contends that there is more than a reasonable probability that no reasonable trier of fact would have found him guilty of aggravated murder." (*Id.* at PageID 155). Similarly, in his first post-conviction petition, petitioner claimed that he did not rob anyone, and the incident was not premeditated. (Doc. 6, Ex. 6 at PageID 41).

Although petitioner does not make the argument in his petition, he also argued that his counsel were ineffective for failing to seek discovery or further investigating his case. (*See* Doc. 6, Ex. 6 at PageID 157). However, as noted at the plea hearing, trial counsel stated that they conducted discovery and reviewed the evidence against petitioner with him and his family. (Doc. 6, Trans. at PageID 240–43). Counsel reviewed the police interview for signs of coercion as well as the evidence against petitioner, including his confession, blood found on his person and in his vehicle, a matching dumbbell found at his residence, and the fact that petitioner showed police the location of the victim's drugs. (*See id.* at PageID 252). Based on the record before the Court and the substantial evidence against him, petitioner has failed to demonstrate that the Ohio courts unreasonably determined that petitioner would not have pled guilty absent any error on the part of his counsel. *See Strickland*, 466 U.S. at 694; *Hill*, 474 U.S. at 59.

counsel coerced him into entering into a plea agreement and that he signed the agreement without reading it are refuted by the record. Because petitioner has otherwise failed to demonstrate that his trial attorneys rendered ineffective assistance of counsel, petitioner is not entitled to federal habeas relief on his single ground for relief.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: May 28, 2020

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

MICHAEL JASON MILLER,
    Petitioner,

vs.

WARDEN, CORRECTIONAL
RECEPTION CENTER,
    Respondent.

Case No. 1:18-cv-424

Cole, J.
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).